In re SHELDON.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS — FAILURE TO COLLECT ASSETS — PERSONAL LIABILITY OF ASSIGNEE.

H. and O. were the sole partners in two private banks,—the S. Bank, and H. & Co. The S. Bank failed, owing the H. Bank $8,000. Certain assets held by the partners were appraised by them and one A. at $26,-000. The partners, in the presence of A., settled their partnership trans-

actions in both banks, and certificates of deposit in the S. Bank were issued, of which two, of $4,000 each, were delivered to the H. Bank in settlement. O. withdrew from the H. Bank, and A. became a partner. During the next two years the certificates were twice renewed. During the next seven years they were again renewed from time to time; each of the latter renewal certificates having written on its face, in red ink, that it was to be paid from the assets of the S. Bank; total certificates, $20,000. A., who then owned these certificates, made a general assignment for the benefit of creditors, and his assignee, O., did not collect these certificates; nor could they have been collected in full from the assets of the S. Bank. Held, that O., assignee, was not liable to the creditors of A. for the full amount of these certificates, as a partner of the S. Bank, since A. took them with full knowledge that the assets of the S. Bank were alone subject to their payment.

2. SAME—SALES NOT IN GOOD FAITH.

An assignee for the benefit of creditors sold at public auction certain certificates of an insolvent bank to his son and daughter. Shortly after, the daughter received $726, and the son $1,083.52, on these certificates, in excess of the amount paid. The son was living at the time in his father's family, and borrowed of his father the money with which he bought his certificate. The daughter was teaching school away from home, and the father used money held by him for her to buy her certificate. Both certificates had previously been sold to the daughter, and, with her consent, again sold at auction. Held, that the county court was justified in setting aside such sales, and charging the assignee with the items of $1,083.52 and $726.

3. SAME—JURISDICTION OF COUNTY COURT.

Under Laws 1877, c. 466, § 20, giving the county court such powers as to accountings by assignees for the benefit of creditors as a surrogate may exercise in reference to an accounting by an executor or administrator, and section 25, providing that such court shall have jurisdiction relating to assignments, and that jurisdiction shall be presumed in support of the orders and decrees therein, unless the contrary is shown, and that its powers shall be those of a court of equity in reference to the trust and any matters involved therein, a county court has jurisdiction to set aside sales of real estate and other property by an assignee for the benefit of creditors.

4. SAME—REMOVAL OF ASSIGNEE.

Under such statutes, the county court also has jurisdiction to remove such assignee, and appoint another in his place.

Appeal from Washington county court.

Final accounting of Orson W. Sheldon, as assignee of the estate of J. Melvin Adams, under a general assignment for benefit of creditors. From an order removing Orson W. Sheldon as assignee, and appointing another in his stead, he appeals; and from the decree settling the account Orson W. Sheldon, the creditors, and Albert N. Sheldon, purchaser at an assignee's sale, appeal. Decree and order affirmed.

Appeal by Arthur Wallace and a large number of other creditors from a decree of the county court of the county of Washington on the final accounting of Orson W. Sheldon as assignee of J. Melvin Adams under the general assignment for the benefit of creditors, which decree is dated the 7th day of May, 1901, and was entered in the office of the clerk of the county of Washington on the 20th day of July, 1901, so far as it adjudges "that Orson W. Sheldon, the assignee herein, is not personally chargeable with the face value or interest of certain assets received by him, known as the 'Smith County Certificates,' which refusal is comprehended in the eighth paragraph of said decree." Also an appeal by Albert U. Sheldon from said decree so far as it adjudges that the sale of property to him be vacated. Also an appeal by Orson W. Sheldon, assignee, from that part of said decree

"which adjudges that the sale of property to Charles H. Sturges is vacated; that part which adjudges that the sale of property to Albert U. Sheldon is vacated, excepting from this notice the sale of the real estate in Ft. Ann, the so-called N. J. Sawyer account, and the county warrants; that part which adjudges that said assignee is charged with the difference between the sums bid by said Albert U. Sheldon and the amount realized by said Albert U. Sheldon, in the aggregate the sum of $1,083.52; that part which disallows the sum of $375, the amount paid L. H. Northrup for general and continuous counsel, and surcharges the assignee's account therewith; that part which disallows the sum of $385 paid Albert U. Sheldon for salary, and surcharges the assignee's account therewith; that part which adjudges that the assignee do not recover any commissions, and disallows his claims therefor; that part which adjudges that the assignee's account be surcharged with $726, as the value of Smith county certificates over the amount realized by the assignee therefor; and that part which adjudges that the assignee pay to Frederick I. Baker, the attorney for the committee of creditors of said estate, the sum of $398.35 for an expert examination of the books of said assigned estate." Also an appeal by Orson W. Sheldon, assignee, from an order of the county court of the county of Washington dated the 25th day of May, 1901, and entered in the office of the clerk of the county of Washington on the 20th day of July, 1901, removing said Orson W. Sheldon as such assignee, and appointing Frederick I. Baker assignee in his place and stead, and from each and every part of such order.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

C. H. Sturges, for assignee.

W. L. Sawyer, for A. U. Sheldon.

E. T. Brackett, J. Sanford Potter, Edgar Hull, and Frederick I. Baker, for creditors.

CHASE, J.   Prior to July 1, 1889, one John Hall and said Orson W. Sheldon were doing business as copartners under the firm name of Smith County Bank at Smith Center, Kan.   At the same time said Hall and said Sheldon were doing a private banking business as copartners at Ft. Ann, in this state, under the firm name of John Hall & Co.   Some time prior to July 1, 1889, John Hall & Co. loaned to Smith County Bank $20,000.   Such indebtedness existed for several years, and on July 1, 1889, there remained unpaid of this amount from the Smith County Bank to John Hall & Co. the sum of $8,000.   Before July 1, 1889, the Smith County Bank went into liquidation, and a national bank was organized that took most of its assets.   There were left, however, in the hands of Hall and Sheldon, the partners composing the Smith County Bank, certain assets, which they continued to hold as partners in liquidation.   About the 1st day of July, 1889, said Hall and Sheldon and said J. Melvin Adams, who was then employed by John Hall & Co., were at the banking house of John Hall & Co., at Ft. Ann, and appraised the assets remaining in the name of the Smith County Bank, and such appraisal amounted to $26,000.   Hall and Sheldon, in the presence of Adams, had a settlement and adjustment of their partnership transactions, including the business done in the name of John Hall & Co., as well as the business that had been done in the name of Smith County Bank.   As a part of such settlement, certificates of deposit in the Smith County Bank were issued to the extent of $26,000, and two certificates, of $4,000 each, a part of such $26,000, were delivered to John Hall &

Co. to settle the balance remaining unpaid to said John Hall & Co. from said Smith County Bank, as stated. In July, 1889, Sheldon withdrew from the firm of John Hall & Co., and took from the assets of the firm $5,035.72, which was an amount equal to the value of his interest. Said J. Melvin Adams then became interested in the firm of John Hall & Co. When Adams became interested in John Hall & Co., the two certificates, amounting to $8,000, were a part of the assets of the firm. On the 1st day of January, 1890, said certificates, to the extent of $7,000, were renewed with one certificate of $4,000 and one of $3,000. On the 1st day of July, 1890, $6,500 of said amount was renewed with one certificate of $4,000 and one of $2,500. On the 1st day of January, 1891, they were again renewed, and on each of these certificates there was written across the face, in red ink, the words: "This certificate to be paid from the assets of the Smith County Bank. Total amount of certificates, $20,-000. A. U. Sheldon, Cashier." On the 22d day of July, 1891, they were again renewed in the same way; and on the 12th day of January, 1892, they were again renewed, and on each of these certificates there was written across the face, in red ink, the words: "This certificate is part of the series of $20,000 issued against the Smith County Bank, payable pro rata from the bank's assets only. A. U. Sheldon, Cashier." These certificates were then renewed in similar form from time to time, and on August 2, 1898, when the general assignment was made by J. Melvin Adams, he owned such renewal certificates, then consisting of two certificates, one of $4,000 and one of $2,000, each dated July 12, 1893, and on each of which was the red-ink indorsement last quoted. The interest on such certificates had been paid to January 4, 1895. The assignee did not collect said certificates, and the same could not have been collected in full from the remaining assets of the Smith County Bank. The decree charges said assignee, on account of said certificates, with the sum of $2,526.

The contesting creditors claim that Hall and Sheldon, as the partners composing the Smith County Bank, were personally liable for the indebtedness represented by said certificates, and that the indorsements placed on the renewal certificates were without consideration, and that Sheldon is still personally liable for the amount of the original indebtedness, less such payments as have been made thereon, and that he, as assignee, should have been charged by the court with the amount thereof. The county court found "that the understanding between the parties at that time [July 1, 1889] was that those certificates were only chargeable upon the assets of the old Smith County Bank, although the first certificates issued did not contain the red-ink indorsement limiting the liability to these assets, which indorsement appears upon the certificates which came into the hands of the assignee." We are of the opinion that the evidence is sufficient to sustain such finding. Hall and Sheldon being the sole owners of the assets in liquidation of Smith County Bank, and also the only persons then interested in the partnership of John Hall & Co., there was no reason, in law or equity, why the agreement found to have been made in regard to the certificates should not have been made. Neither was there anything then to prevent Hall and Sheldon, in the adjust-

ment and settlement of their partnership affairs, from canceling entirely the claims of John Hall & Co. against the Smith County Bank. Adams knew that the certificates so given to John Hall & Co., and included in its assets when he became interested in that partnership, were only payable from the remaining assets of the Smith County Bank, and that, under the agreement under which they were given and received, they could not be collected from the persons composing the Smith County Bank. As John Hall & Co. and Adams individually could not enforce these certificates against Hall and Sheldon, the county court was right in refusing to charge the amount of such certificates against Sheldon as assignee for the benefit of Adams' creditors. Each time that the renewal certificates became due, they were indorsed at the banking house of John Hall & Co., and forwarded to Smith Center, Kan., where they were received, and new certificates were issued and returned to John Hall & Co. All of the certificates not bearing the red-ink indorsement expressly limiting the liability expressed in the certificates were so indorsed and delivered to, and accepted by, the Smith County Bank, and new certificates issued in place thereof, more than six years prior to the delivery of the general assignment from Adams to Sheldon. The right of action, if any, on such certificates, would seem to be barred by the statute of limitations.

On the 4th day of November, 1899, the assignee sold at public auction certain real estate and other assets of the assigned estate. On such sale Albert U. Sheldon, a son, and Helen M. Sheldon, a daughter, of the assignee, were purchasers of most of the property so sold. Within a short time after such sale, and prior to the accounting by the assignee, Helen M. Sheldon received on the certificates of the Smith County Bank purchased by her $726 in excess of the amount at which they were purchased by her, and Albert U. Sheldon received from a part of the assets purchased by him $1,083.52 more than the amount paid by him for such assets; and there remains in his name, undisposed of, a part of the assets so purchased by him. Albert U. Sheldon, at the time of such auction sale, was living with his wife and five children, with his father, the assignee, and his mother, as one family. He was then, and for five or six years prior thereto had been, employed by a firm of which his father was the senior member, and he received for his services $10 per week. He kept the accounts of the assignee, and attended to his correspondence. He did not pay his father any regular sum for board, and had no property, except a small amount of money, which he carried on his person. The money with which he made the purchases at the said auction sale he borrowed of his father, the assignee, on the day of the sale. Helen M. Sheldon, the assignee's daughter, is a single woman, engaged in teaching school in Chicago. Her money was in her father's hands. Prior to the auction, the assignee, after corresponding with his daughter, sold the Smith County Bank certificates to her, and paid for them out of money in his hands. Notwithstanding the sale of said certificates to Helen M. Sheldon prior to the auction, they were, with her consent, again exposed for sale at the auction, and again purchased for her at the same amount that had been paid by her therefor.

The court found:

"The sales made at said auction by said assignee to his son, Albert U. Sheldon,   *   *   *   were not made by him in good faith; nor were said purchases made by said Albert U. Sheldon in good faith on his part."

The county court has the power expressly stated in section 20 of chapter 466 of the Laws of 1877, including such other or further powers in respect to the proceedings and the accounting therein as a surrogate may, by law, exercise in reference to an accounting by an executor or administrator. Section 25 of said act also provides:

"Any proceeding under this act shall be deemed for all purposes, including review by appeal or otherwise, to be a proceeding had in the court as a court of general jurisdiction, and the court shall have full jurisdiction to do all and every act relating to the assigned estate, the assignees, assignors and creditors, and jurisdiction shall be presumed in support of the orders and decrees therein unless the contrary be shown; and after the filing or recording of an assignment under this act, the court may exercise the powers of a court of equity in reference to the trust and any matters involved therein."

The court charged the assignee with the items of $1,083.52 and $726 (being the amounts received by his son and daughter, respectively, for assets purchased in their names in excess of the amounts paid for such assets), and set aside and vacated each and every of said sales where the rights of third parties had not intervened.

It is unnecessary for this court to discuss the many questions presented by the appeal of the assignee. The decision of the court includes findings on those several questions, and the evidence is sufficient to sustain such findings. The court had jurisdiction to make the decree, and it is sustained by the findings of fact. It follows that the order removing Orson W. Sheldon as assignee, and appointing an assignee in his place, after due notice, was right.

Decree and order affirmed, with costs to the assignee and to the contesting creditors payable out of the fund remaining in the hands of Orson W. Sheldon as such assignee. All concur.